UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEONDRE LAMONT
COLEMAN,

        Plaintiff

v.

HEIDI WASHINGTON,
MICHAEL EAGEN,
BRIAN SHIPMAN,
KENNETH ROMANOWSKI,
SARAH VALADE,
BARBARA ANDERSON,
ANGELA FORTESCUE,

        Defendants.
_____/

Case No. 2:18-cv-13171
District Judge Arthur J. Tarnow
Magistrate Judge Anthony P. Patti

**REPORT AND RECOMMENDATION TO GRANT DEFENDANT ROMANOWSKI'S MOTION FOR SUMMARY JUDGMENT (ECF 25)**

1

**I.    RECOMMENDATION:** The Court should grant Defendant Romanowski's exhaustion-based motion for summary judgment (ECF 25) and dismiss Plaintiff's claims against this defendant. If the Court agrees with this recommendation, Plaintiff's revived claims against Defendants Washington, Eagen, Shipman, and Valade, which are within the amended complaint (ECF 15) and which are discussed in a separate order (ECF 40), will remain to be addressed.

**II.   REPORT:**

   **A.    Background**

In 2015, Deondre Lamont Coleman was sentenced in state court for 1st degree retail fraud and possession of a controlled substance. Case No. 2015-255257-FH (Oakland County).[1] Coleman claims that, on or about October 4, 2017, he was ordered to complete ASAT (Advanced Substance Abuse Treatment), a 90-day in-custody treatment program at the Michigan Department of Corrections (MDOC) Detroit Reentry Center (DRC). (ECF 1 at 1.) According to Coleman, DRC "does not have a religious kitchen . . . [,]" and "the transported foods [were]

---

[1] *See* www.michigan.gov/corrections, "Offender Search" (last visited Oct. 16, 2019). He also has earlier convictions for 1st degree retail fraud and breaking and entering. *See* Case No. 2011-236969-FH (Oakland County), Case No. 2002-187804-FH (Oakland County). (*Id.*, https://courtexplorer.oakgov.com/OaklandCounty.)

not edible or safe." (ECF 1 at 1.) Plaintiff allegedly completed ASAT on February 4, 2017. (*Id.*)

Coleman was charged with April 2018 violations of certain parole conditions. (ECF 1 at 13.) He claims he was again sanctioned to the DRC on April 16, 2018, this time for Residential Substance Abuse Program (RSAT), purportedly an 8-month in-custody treatment program. (ECF 1 at 1.) He inquired about his religious diet, and, on June 5, 2018, registered dietician A. Fortescue responded, *inter alia*, that Plaintiff would have to contact administration. (ECF 1 at 14, DE 7 at 29, ECF 15 at 15.) It appears that, on or about June 8, 2018, Coleman "failed to participate and/or complete the residential Substance Abuse Treatment (RSAT) program, causing him to be discharged." (ECF 1 at 12.) Apparently, Plaintiff's parole was revoked in August 2018. (ECF 1 at 10-12, DE 7 at 26-28, ECF 15 at 12-14.) Nonetheless, he appears to have successfully completed substance abuse treatment on December 14, 2018 at STF. (ECF 7 at 30, ECF 15 at 16.)

### B. The Instant Case

On October 11, 2018, while incarcerated at STF, Plaintiff filed the instant matter *in pro per* against seven defendants: (1) Heidi Washington; (2) Michael Eagen; (3) Brian Shipman; (4) K. Romanski (Kenneth Romanowski); (5) S. (Sarah) Valade; (6) Barbara Anderson; and, (7) A. (Angela) Fortescue. (ECF 1 at

3

2, 15.)  Substantively, Plaintiff's initial pleading is 4 pages in length and generally concerns his access to religious meals that do not fall short of nutritional guidelines.  (ECF 1 at 1-4.)[2]

On February 19, 2019, the Court entered an opinion and order of partial summary dismissal, which dismissed the complaint as to Defendants Washington, Eagen, Shipman, Valade, Anderson and Fortescue, and ordered the United States Marshal Service (USMS) to serve a copy of the complaint upon Defendant Romanowski without prepayment of costs.  (ECF 8.)  Romanowski has since appeared via counsel.  (ECFs 20-22.)

On April 4, 2019, while at the MDOC's Macomb Correctional Facility (MRF), Plaintiff filed a "supplement amended complaint."  (ECF 15, ECF 13.)  Three weeks later, on April 25, 2019, he was paroled from the MDOC.[3]

### C.   Instant Motion

---

[2] In support of his complaint, Plaintiff attaches MDOC Policy Directives 04.07.100 (Offender Meals) and 05.03.150 (Religious Beliefs and Practices of Prisoners). (ECF 1 at 5-9, DE 7 at 21-25.)

[3] (See www.michigan.gov/corrections, "Offender Search" (last visited Oct. 15, 2019).)  As the MDOC explains, "Release of a prisoner on parole shall be granted solely upon the initiative of the Parole Board. Most parolees live in a residence, but some do not. Generally, parolees are housed in the community and live in other states through the Interstate Compact, to which Michigan belongs." (See http://mdocweb.state.mi.us/OTIS2/aboutotis2.aspx#Parole (last visited Oct. 15, 2019).)

Judge Tarnow has referred this case to me for pretrial matters. (ECF 9.) Currently pending before the Court is Defendant Romanowski's July 10, 2019 motion for summary judgment, wherein he claims that Plaintiff "did not exhaust his administrative remedies[.]" (ECF 25 at 4, 10, 16.)

Plaintiff filed a timely, verified response. (ECF 27, ECF 34.)

### D.  Discussion

#### 1.  Plaintiff's claims against Defendant Romanowski concern the provision of religious meals at DRC.

As mentioned above, Plaintiff filed his initial pleading on October 11, 2018 and his amended pleading on April 4, 2019. (ECFs 1, 15.) "Generally, when a pleading is amended under Rule 15(a), the amended pleading supersedes the original pleading." *LeBlanc v. Romanowski*, No. 14-CV-13219, 2015 WL 4715951, at *3 (E.D. Mich. Aug. 7, 2015) (Duggan, J.). Therefore, as explained in further detail in another order (ECF 40), Plaintiff's amended complaint (ECF 15) is the operative pleading.

Nonetheless, it is unclear whether Defendant Romanowski's instant motion for summary judgment relates to Plaintiff's claims within the original complaint or those in the amended complaint. (*See* ECF 25 at 9-10.) For this reason, the Court will review both sets of claims against Defendant Romanowski, which are similar. With respect to Defendant Romanowski, the Court has previously characterized Plaintiff's original pleading as follows:

> Though not expressly stated in the complaint, reading the pro se pleading liberally, the Court will construe it as alleging that Defendant Romanowski, as Warden of the Detroit Reentry Center, was responsible for the provision of religious meals at his facility.
> . . .
> Reading the complaint liberally, Plaintiff has sufficiently alleged a religious practice–Halal dietary restrictions–and a sincerely held religious belief with respect to that practice.  He also has sufficiently alleged at this juncture an infringement upon this religious practice by the failure to provide him with sufficient and edible religious meals. Accordingly, the Court will order service of the complaint on defendant Romansowski [sic].

(ECF 8 at 3-4.)  In his amended complaint, Plaintiff claims that:

- Romanowski "or any staff at D.R.C. is remotely familiar with religious meals requirements[.]"  (ECF 15 at 2.)

- Romanowski's "open disregard for R.L.U.I.P.A. provisions has occurred twice thus far with the likelihood of repetition by any M.D.O.C. untrained staff[.]"  (*Id.*)

- Romanowski and others have an "overt disregard for previous trips to protective custody."  (*Id.*)

(ECF 15 at 2.)  Furthermore, seemingly invoking the doctrine of municipal liability, Plaintiff contends that untrained staff's "commitment to programming only at D.R.C. proves not only their pathetic state of concern [for] Plaintiff's health and well[-]being but it also demonstrates" that Romanowski and others are "morally bankrupt" and that RLUPIA provisions, liberty interests, and equal protections "weigh[] zero to them

6

all[.]" (ECF 15 at 3; *see also* ECF 15 at 5 ¶ 3.)[4] Plaintiff claims there is imminent danger of "prison for programming," which is unconstitutional. (ECF 15 at 5 ¶¶ 4-5.)[5] In addition, Plaintiff seems to rely upon 42 U.S.C. § 2000bb-1 ("Free exercise of religion protected"). (ECF 15 at 5 ¶ 6.) Finally, Plaintiff claims that DRC is facially unconstitutional. (ECF 15 at 5 ¶ 8.)

### 2. Exhaustion of Available Administrative Remedies

"No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are *available* are exhausted." 42 U.S.C. § 1997e(a) ("Applicability of administrative remedies") (emphasis added). "This requirement is mandatory but not jurisdictional, and applies to all federal claims seeking redress for prison circumstances or occurrences regardless of the type of relief being sought." *Lee v.*

---

[4] Plaintiff cites *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989) ("the inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact.").

[5] Plaintiff cites *Ashley v. Dilworth*, 147 F.3d 715, 717 (8th Cir. 1998) ("Ashley meets the imminent danger exception in § 1915(g).") and *Tapia v. United States*, 564 U.S. 319, 321 (2011) ("the Sentencing Reform Act precludes federal courts from imposing or lengthening a prison term in order to promote a criminal defendant's rehabilitation.").

*Willey*, 789 F.3d 673, 677 (6th Cir. 2015). "[F]ailure to exhaust is an affirmative defense under the PLRA, and . . . inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Jones v. Bock*, 549 U.S. 199, 216 (2007). Stated otherwise, "the defendant has the burden to plead and prove by a preponderance of the evidence." *Lee*, 789 F.3d at 677 (citing *Jones*, 549 U.S. at 216).

      **a.**    **Exhaustion**

Defendant Romanowski appears to be correct that Plaintiff "did not go through the grievance process on the issues in his complaint about the [DRC]." (ECF 25 at 16.) "[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones*, 549 U.S. at 218. The MDOC's grievance policy explains that "[c]omplaints filed by prisoners regarding grievable issues as defined in this policy serve to exhaust a prisoner's administrative remedies only when filed as a grievance through all three steps of the grievance process in compliance with this policy." MDOC PD 03.02.130 ("Prisoner/Parolee Grievances"), effective July 9, 2007, ¶ B. Carolyn Nelson's Affidavit for Step III Grievances, accompanied by the "MDOC Prisoner Step III Grievance Report" dated July 8, 2019, support the conclusion that the MDOC most recently received Step III grievance appeals from Plaintiff on May 7, 2014. (ECF 25-4 at 4; PRF-14-

8

04-0341-28i, PRF-14-04-0322-28i.)[6]  Thus, Defendant Romanowski has convincingly illustrated that Plaintiff did not file a Step III grievance concerning the alleged sanctions to DRC during October 2017 or April 2018, as mentioned in his initial pleading.[7]

      Plaintiff's contention that he need not exhaust his administrative remedies is unavailing.  Preliminarily, Plaintiff's lawsuit concerns "prison conditions," so 42 U.S.C. § 1997e(a) applies here.  As such, Plaintiff's claim that exhaustion of administrative remedies is not required for RLUIPA claims is misplaced (ECF 1 at 2), as is his reliance on *Murphy v. Zoning Comm'n of Town of New Milford*, 148 F. Supp. 2d 173, 182 (D. Conn. 2001) ("As plaintiffs have brought § 1983 claims in this suit, they were not required to exhaust state administrative remedies prior to initiating this action in federal court.")).  *Murphy* did not involve 42 U.S.C. § 1997e ("Suits by prisoners").

---

[6] Attached to Plaintiff's motion response is the October 2018 Step I grievance response in 2018-09-0780-14f, which appears to have concerned Ms. Hitchingham's denials of Plaintiff's requests for copies of legal documents.  (ECF 15 at 6.)  The response acknowledged that "the documents should have been copied[,]" and was signed by Librarian M. Sorensen and ADW G. Miniard.  (*Id.*)  Thus, while the Court is without Plaintiff's actual Step I grievance form, it does not appear that it related to the claims against Defendant Romanowski and the conditions of confinement at DRC.

[7] In Plaintiff's motion response, he discusses an alleged July/August 2019 assignment to DRC, which he labels, "the fourth time[.]"  (ECF 34 at 5 (emphasis added).)  If Plaintiff was assigned to DRC at some point other than October 2017, April 2018 and July/August 2019, then it is unclear to the Court.

Plaintiff also argues that DRC "is not a prison[,]" therefore, the PLRA's exhaustion requirement does not apply. (ECF 15 at 5 ¶ 2.) However, it seems that Plaintiff knows better, as he previously filed grievances while at the DRC in 2014, when it bore the designation PRF. (ECF 25-4 at 4; PRF-14-04-0341-28i, PRF-14-04-0322-28i.)[8] More to the point, the relevant MDOC policy directive is titled, "Prisoner/Parolee Grievances," and it contains the following policy statement: "*[p]risoners and parolees* shall be provided with an effective method of seeking redress for alleged violations of policy and procedure or unsatisfactory conditions of confinement." MDOC PD 03.02.130, effective July 9, 2007 (emphasis added). It also provides that "*[p]risoners and parolees* are required to file grievances in a responsible manner." (*Id.* ¶ G (emphasis added).) As the MDOC's website explains, the DRC "falls under the Office of Parole and Probation Services within the Field Operations Administration. The goal of DRC is to enhance public safety and parolee success. The DRC houses parolees and prisoners." *See* https://www.michigan.gov/corrections/0,4551,7-119-1435_1498---,00.html (last visited Oct. 15, 2019). Thus, the Court has little reason to believe that Plaintiff

---

[8] "On October 1, 2012, the Ryan Correctional Facility was closed and reopened as the Detroit Reentry Center (PRF) for parole violators." (*See* https://www.michigan.gov/documents/corrections/01-15-15_-_Section_8041_479882_7.pdf.)

would be excused from the exhaustion requirement with respect to prison conditions at DRC.

Additionally, Plaintiff improperly attempts to create an imminent danger exception to Section 1997e(a). Plaintiff contends that, "[w]hen a person is in imminent danger[,] exhaustion is not required[.]" (ECF 15 at 3.) (*See also* ECF 1 at 2; ECF 34 at 2; ECF 34 at 10 ¶ 4.) Here, Plaintiff appears to be referring to the "imminent danger" exception to 28 U.S.C. § 1915(g). *Rittner v. Kinder*, 290 F. App'x 796, 797 (6th Cir. 2008); *see also Ashley*, 147 F.3d at 716-717. However, the Supreme Court has explained that "[c]ourts may not engraft an unwritten 'special circumstances' exception onto the PLRA's exhaustion requirement. The only limit to § 1997e(a)'s mandate is the one baked into its text: An inmate need exhaust only such administrative remedies as are 'available.'" *Ross v. Blake*, 136 S. Ct. 1850, 1862 (2016). *See also Williams v. White*, 724 F. App'x 380, 383 (6th Cir. 2018) ("there is no mental-capacity exception to the PLRA.").

### b. Available

Thus, the question becomes whether the grievance procedure was available to Plaintiff at DRC. An administrative procedure may be *unavailable* when it operates as a "simple dead end," is "so opaque that it becomes, practically speaking, incapable of use[,]" or where "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation,

11

or intimidation." *Ross*, 136 S. Ct. at 1859-1860.  "A prisoner's lack of compliance may be excused if the administrative remedies are not available, but this court has required a prisoner to make affirmative efforts to comply with the administrative procedures before analyzing whether the facility rendered these remedies unavailable*.*" *Lee*, 789 F.3d at 677 (internal quotations and citation omitted).

      Plaintiff's claim that there is "nothing a grievance can do" does not amount to unavailability of the grievance process as to his claims within the original or amended complaints.  (ECF 34 at 6.)  More specifically, in his verified response, Plaintiff claims the he wrote two grievances (August 2nd and 3rd), but they were returned to him on August 6, 2019, without investigation and with the verbal message to "stop writing grievances[.]"  (*Id*.)  As Plaintiff points out, "the exhaustion requirement should not operate as an absolute bar to an inmate's claim where prison administrators prevent or altogether refuse to review the allegations on which the claim is based." *Alexander v. Carrick*, 31 F. App'x 176, 178 (6th Cir. 2002).  (ECF 34 at 10 ¶ 6.)  Nonetheless, even if Plaintiff's claims were true about the grievances he allegedly submitted in *August 2019*, they would not operate to exhaust his administrative remedies as to the claims against Romanowski, which are the subject of either his October 11, 2018 original or April 4, 2019 amended complaints.  (ECFs 1, 15.)  *See Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999) ("The plain language of the statute makes exhaustion a precondition to filing

an action in federal court . . . . The prisoner, therefore, may not exhaust administrative remedies during the pendency of the federal suit.") (internal and external citations omitted).  If Plaintiff is arguing that pre-suit attempts to *grieve* the conditions at DRC met a similar fate, it is not clear, and this is not cured by the ambiguous statement that he "notified multiple officials of the food conditions, but no one responded[.]"  (ECF 34 at 10 ¶ 1.)

### 3. Conclusion

In sum, Defendant Romanowski has convincingly illustrated that Plaintiff failed to exhaust his administrative remedies as to Plaintiff's claims against him prior to filing suit.  Therefore, the Court should grant Defendant Romanowski's exhaustion-based motion for summary judgment (ECF 25) and dismiss Plaintiff's claims against this defendant.  If the Court agrees with this recommendation, Plaintiff's revived claims against Defendants Washington, Eagen, Shipman, and Valade, which are within the amended complaint (ECF 15) and which are discussed in a separate order (ECF 40), will remain to be addressed.

### III. PROCEDURE ON OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right

of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.* Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.* If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated: October 30, 2019         s/*Anthony P. Patti*
                                Anthony P. Patti
                                UNITED STATES MAGISTRATE JUDGE

## **Certificate of Service**

I hereby certify that a copy of the foregoing document was sent to parties of record on October 31, 2019, electronically and/or by U.S. Mail.

                                              s/Michael Williams
                                              Case Manager for the
                                              Honorable Anthony P. Patti