UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEONDRE LAMONT COLEMAN,

Plaintiff

Case No. 2:18-cv-13171
District Judge Arthur J. Tarnow
Magistrate Judge Anthony P. Patti

v.

HEIDI WASHINGTON,
MICHAEL EAGEN,
BRIAN SHIPMAN,
KENNETH ROMANOWSKI,
SARAH VALADE,
BARBARA ANDERSON,
ANGELA FORTESCUE,

Defendants.
_______________________________________/

**REPORT AND RECOMMENDATION TO (1) DENY PLAINTIFF'S DECEMBER 2019 REQUESTS FOR CLASS CERTIFICATION AND PRELIMINARY INJUNCTION & MOTION INDEPENDENT OF FINAL JUDGMENT (ECF Nos. 51, 52, 65); (2) GRANT MDOC DEFENDANTS WASHINGTON, EAGEN, SHIPMAN AND VALADE'S JANUARY 14, 2020 MOTION FOR SUMMARY JUDGMENT BASED ON FAILURE TO EXHAUST AND TO DISMISS BASED ON ELEVENTH AMENDMENT IMMUNITY (ECF No. 57); and, (3) DISMISS CERTAIN CLAIMS PURSUANT TO 28 U.S.C. § 1915(e)(2)(B)**

**I. RECOMMENDATION:** The Court should **DENY** Plaintiff's December 2019 requests for class certification and preliminary injunction (ECF Nos. 51, 52) & March 2020 motion independent of final judgment (ECF No. 65). As for Defendants' January 14, 2020 motion for summary judgment and to dismiss (ECF No. 57), the Court should **GRANT** the motion to the extent it seeks exhaustion-based dismissal of Plaintiff's claims regarding the provision of religious meals at DRC during his October 2017 and April 2018 reassignments and Plaintiff's official capacity damage claims as barred by the Eleventh Amendment. Finally, pursuant to 28 U.S.C. § 1915(e)(2)(B), the Court should dismiss Plaintiff's claims regarding his apparent August 2018 parole revocation.

## II. REPORT:

### A. Background

In 2015, Deondre Lamont Coleman was sentenced in state court for 1st degree retail fraud and possession of a controlled substance. Case No. 2015-255257-FH (Oakland County).[1] Coleman claims that, on or about October 4, 2017, he was ordered to complete ASAT (Advanced Substance Abuse Treatment), a 90-

[1] *See* www.michigan.gov/corrections, "Offender Search" (last visited June 9, 2019). He also has earlier convictions for 1st degree retail fraud and breaking & entering. *See* Case No. 2011-236969-FH (Oakland County), Case No. 2002-187804-FH (Oakland County). (*Id.*, https://courtexplorer.oakgov.com/OaklandCounty.)

day in-custody treatment program at the Michigan Department of Corrections (MDOC) Detroit Reentry Center (DRC). (ECF 1, PageID.1.) According to Coleman, DRC "does not have a religious kitchen . . . [,]" and "the transported foods [were] not edible or safe." (*Id.*) Plaintiff allegedly completed ASAT in February 2018. (*Id.*; *see also* ECF No. 61, PageID.388.)

Coleman was charged with April 2018 violations of certain parole conditions. (ECF 1, PageID.13.) He claims he was again sanctioned to the DRC on April 16, 2018, this time for Residential Substance Abuse Program (RSAT), purportedly an 8-month in-custody treatment program. (ECF 1, PageID.1.) He inquired about his religious diet, and, on June 5, 2018, registered dietician A. Fortescue responded, *inter alia*, that Plaintiff would have to contact administration. (ECF 1, PageID.14; DE 7, PageID.75, ECF No. 15, PageID.127; ECF No. 65, PageID.425.)

It appears that, on or about June 8, 2018, Coleman "failed to participate and/or complete the residential Substance Abuse Treatment (RSAT) program, causing him to be discharged." (ECF 1, PageID.12.) According to Plaintiff, he was sent "back to prison" on June 28, 2018. (ECF No. 61, PageID.391.) Apparently, Plaintiff's parole was revoked in August 2018. (ECF 1, PageID.10-12; DE 7, PageID.72-74, ECF No. 15, PageID.124-126; ECF No. 65, PageID.420.) Nonetheless, he appears to have successfully completed substance abuse treatment

on December 14, 2018 at the Central Michigan Correctional Facility (STF). (ECF No. 7, PageID.76; ECF No. 15, PageID.128.)

**B. The Operative Pleading Remains Active as to Four Defendants.**

Meanwhile, on October 11, 2018, while incarcerated at STF, Plaintiff filed the instant matter *in pro per* against seven defendants: (1) Heidi Washington, the MDOC Director; (2) Michael Eagen, the Parole Board Chairperson; (3) Brian Shipman, a Parole Board Member; (4) K. Romanski (Kenneth Romanowski), then DRC Warden; (5) S. (Sarah) Valade, since identified as DRC's on-site Parole Supervisor; (6) Barbara Anderson, a Registered Dietitian; and, (7) A. (Angela) Fortescue, a Registered Dietitian. (ECF 1, PageID.2, 15; ECF No. 15, PageID.115.)

On February 19, 2019, the Court summarily dismissed the complaint as to Defendants Washington, Eagen, Shipman, Valade, Anderson, and Fortescue. (ECF No. 8, PageID.81.) The case was then referred to me for pretrial matters. (ECF No. 9.)

On April 4, 2019, while at the MDOC's Macomb Correctional Facility (MRF), Plaintiff filed a "supplement amended complaint," which names Washington, Eagen, Shipman, Romanowski, Fortescue and Valade as Defendants and seeks a mixture of monetary, injunctive and/or declaratory relief. (ECF No. 15, PageID.113, 116.) On April 25, 2019 - approximately 300 days after his

alleged return to prison - Plaintiff was paroled from the MDOC. *See* www.michigan.gov/corrections, "Offender Search" (last visited May 3, 2020). (*See also* ECF No. 61, PageID.391.)

On October 30, 2019, I entered an opinion and order, which directed the Clerk of the Court to re-activate Defendants Washington, Eagen, Shipman, and Valade, directed the USMS to attempt service of the amended complaint (ECF No. 15) upon the reactivated defendants, and denied without prejudice Plaintiff's April 15, 2019 motion for the appointment of counsel (ECF No. 17). (ECF No. 40.) The Undersigned has since recognized the amended complaint (ECF No. 15) as the operative pleading. (*See* ECF No. 41, PageID.301; ECF No. 43, PageID.326.) On December 6, 2019, the Court granted Defendant Romanowski's motion for summary judgment. (ECF Nos. 25, 46.)

Accordingly, the operative pleading (ECF No. 15) remains active as to Defendants Washington, Eagen, Shipman and Valade.

**C. Plaintiff's "Requests" & Motion for Dispositive Relief (ECF Nos. 51, 52, 65)**

Plaintiff has filed a 1-page, Fed. R. Civ. P. 23 Request for Class Certification. (ECF No. 51, PageID.352.) He claims that, from 2012 to 2019, there has been an untold number of parolees sent to prison for programming, because DRC could not accommodate an adequate, healthy religious meal. (*Id*.) Perhaps unaware that that the Court had granted Romanowski's motion for

summary judgment (ECF Nos. 46, 48), Plaintiff contends that discovery from Romanowski would assist the Court in answering the class certification question. (*Id*.) Setting aside the question of whether Plaintiff has illustrated Rule 23(a)'s prerequisites, which are hardly a cakewalk, the Court should deny this motion without prejudice to renewal if Plaintiff's case survives Defendants' pending motion for summary judgment (ECF No. 57).

Plaintiff has also filed a 1-page request for preliminary injunction. (ECF No. 52, PageID.353.) The Court should deny this request, as it relates to the conditions of confinement at KCCF. Notwithstanding Plaintiff's attempt to address the factors of irreparable harm, likelihood of success on the merits, and public interest, his request for a "hearing on damages and release to Kent Co. Parole" is beyond the scope of this lawsuit, which was filed against MDOC officials concerning alleged events at DRC. I also note that that Kent County is in the Western District of Michigan.

More recently, in March 2020, Plaintiff filed a "motion [independent] of final judgment," whereby he requests "independent relief before final judgment[.]" (ECF No. 65, PageID.419.) He claims that "a[n] independent ruling will protect others subjected to correctional religious bullying[.]" (*Id*.) Defendants have explained that they do not intend to file a formal response, unless the Court requests for them to do so. (ECF No. 66.) As with Plaintiff's request for class

certification, the Court should deny Plaintiff's motion (ECF No. 65). Frankly, it is difficult to discern what "independent" relief Plaintiff seeks, *e.g.*, $7,500 in damages apart from the final judgment in this case, amendment or supplementation of his pleading to include others, a ruling by this Court rather than the MDOC? Plaintiff's unclear request has tied the Court's hands.

**D. Defendants' Dispositive Motion (ECF No. 57)**

Also pending before the Court is the MDOC Defendants Washington, Eagen, Shipman and Valade's January 14, 2020 combined motion for summary judgment based on failure to exhaust and to dismiss based on Eleventh Amendment immunity. (ECF No. 57.)

Plaintiff's response was due on or before February 14, 2020, per the Court's January 15, 2020 Order Requiring a Response, which was returned as undeliverable. (ECF Nos. 58, 59.) Plaintiff's response, post-marked February 10, 2020, was filed on February 27, 2020. (ECF No. 61.) The Court has since explained that it will accept the late response; yet, Plaintiff's copy of that order was also returned to the Court as undeliverable. (ECF No. 63, PageID.415; ECF No. 64.)

Defendants filed their combined reply on February 27, 2020. (ECF No. 62.)

**1. Plaintiff's claims against Defendants Washington, Eagen, Shipman and Valade concern the provision of religious meals upon reassignment to DRC during October 2017 and**

**April 2018 *and* the apparent August 2018 revocation of his parole.**

"[T]he paramount policies embodied in the well-pleaded complaint rule" include that "the plaintiff is the master of the complaint," and that "a federal question must appear on the face of the complaint . . . ." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 398–399 (1987). Although Plaintiff's complaint is difficult to understand, the Court has made reasonable efforts to discern his claims.

**a. Defendant Washington**

Plaintiff claims that Defendant Washington "failed to train employees at [the] Detroit Reentry Center to appropriately handle persons approved for religious meals[.]" (ECF No. 15, PageID.113.) Plaintiff's various references to *City of Canton, Ohio v. Harris*, 489 U.S. 378 (1989) suggest that he intended to bring a municipal liability claim. (ECF No. 15, PageID.113-117.) *See Canton*, 489 U.S. at 388 ("the inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact."). However, because Plaintiff only named individual Defendants, *i.e.*, not a municipality, the Court interprets Plaintiff's claim against Defendant Washington as one based on alleged supervisory liability.[2]

[2] Plaintiff contends that a supervisor can be held liable for failing to train officials. (ECF No. 61, PageID.397.) Still, as the Sixth Circuit has succinctly put it, albeit in

**b. Defendants Eagen and Shipman**

Presumably referencing the August 2018 Parole Board decision, Plaintiff claims that Defendants Eagen and Shipman "belittle[d]" Plaintiff's religious exercise and "abuse[d] their authority by not viewing the evidence in a[n] nonbias[ed] way . . . ." (ECF No. 15, PageID.114, 124-126; ECF No. 65, Page ID.420.) Plaintiff also claims that Defendants Romanowski, Eagen, and Shipman overtly disregarded Plaintiff's "previous trips to protective custody." (ECF No. 15, PageID.114.) Seemingly invoking the doctrine of municipal liability, Plaintiff contends that untrained staff's "commitment to programming only at D.R.C[.] proves not only their pathetic state of concern [for] Plaintiff's health and well[-]being but it also demonstrates" that Defendants Eagen and Shipman are "morally bankrupt" and that RLUIPA provisions,[3] liberty interests, and equal protections "weigh[] zero to them all[.]" (ECF 15, PageID.115.)

---

an unpublished case, "[t]he doctrine of respondeat superior does not apply in § 1983 lawsuits to impute liability onto supervisory personnel, . . . unless the plaintiff shows 'that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it.'" *Brown v. MDOC*, No. 98-1587, 2000 WL 659031, *3 (6th Cir. 2000) (internal citation to *Monell v. Department of Social Servs. of New York*, 436 U.S. 658, 691-695 (1978) and quoting *Bellamy v. Bradley,* 729 F.2d 416, 421 (6th Cir. 1984)).

[3] The Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA) is codified at 42 U.S.C. §§ 2000cc - 2000cc-5. Presumably, Plaintiff brings his RLUIPA claim pursuant to 42 U.S.C. § 2000cc-1 ("Protection of religious exercise of institutionalized persons").

**c. Defendant Valade**

Defendant Valade testified at Plaintiff's August 2018 parole violation arraignment, at which time she apparently expressed, *inter alia*, that she "is not familiar with the requirements of the religious diet[,]" and "believes the meals are transferred from MRF to DRC weekly." (ECF No. 15, PageID.125.) Plaintiff's claim against Defendant Valade, DRC's on-site Parole Supervisor, appears to be based upon her testimony before the Parole Board and/or her involvement with the Parole Board's August 2018 decision, because Plaintiff takes issue with Valade's alleged lack of training in or familiarity with the religious meal requirements and transportation. (ECF No. 15, PageID.115.)

**d. Legal arguments**

In the "Argument" section of his operative pleading, Plaintiff acknowledges that, if a prisoner's modified diet "is sufficient to sustain the prisoner in good health," then "no constitutional right has been violated." *Alexander v. Carrick*, 31 F. App'x 176, 179 (6th Cir. 2002). (ECF No. 15, PageID.117 ¶ 1.) *See also Cunningham v. Jones*, 567 F.2d 653, 660 (6th Cir. 1977) ("whether the one meal actually provided the plaintiff was sufficient to maintain normal health."). However, he contends that "[n]one of the officials at [DRC] are train[]ed or equipped to handle, serve, or stor[e] . . . religious meals[.]" (ECF No. 15, PageID.117 ¶ 3; *see also* ECF No. 15, PageID.116.) Plaintiff claims there is

imminent danger of unconstitutional "prison for programming" and of unconstitutional housing arrangements at DRC. (*Id.*, ¶¶ 4-5, 8; *see also* ECF No. 15, PageID.113-114; *see also* ECF No. 61, PageID.388-389, 395 & 399 [ultrahazardous activity].)[4] In addition, Plaintiff seems to rely upon 42 U.S.C. § 2000cc-1 ("Protection of religious exercise of institutionalized persons"), as he argues that DRC "is not the least restrictive means of programming when approved for religious meals[.]" (*Id.*, PageID.115, 117 ¶ 6.)

**e. Scope**

Perhaps anticipating his then-impending parole, Plaintiff contends that his claim "should not be mooted by release . . . [,]" because he has twice been subjected to DRC. (ECF No. 15, PageID.117, ¶ 7.) For this reason, and because Plaintiff's amended complaint elsewhere suggests that he has twice been sent to

---

[4] Plaintiff supports his "prison for programming" argument by citing *Tapia v. United States*, 564 U.S. 319, 321 (2011) ("the Sentencing Reform Act precludes federal courts from imposing or lengthening a prison term in order to promote a criminal defendant's rehabilitation."), as well as several 6th Circuit cases. (ECF No. 15, PageID.114-115, 117). *See United States v. Walker*, 649 F.3d 511, 513 (6th Cir. 2011); *United States v. Turlin*, 486 F. App'x 588, 591 (6th Cir. 2012); *United States v. Arnold*, 630 F. App'x 432, 438 (6th Cir. 2015); *United States v. Adams*, 873 F.3d 512, 522 (6th Cir. 2017); and, *United States v. Hyrne*, 2018 U.S. App. LEXIS 9275, *6 (6th Cir. Apr. 12, 2018). (ECF No. 15, PageID.114-115.) According to Plaintiff, he was subjected to 300 days of prison for programming, *i.e.*, from his June 28, 2018 return to prison to his April 25, 2019 parole, "to complete a program already completed at D.R.C[.]" (ECF No. 61, PageID.391, 395 ¶ M.)

DRC, the Court interprets Plaintiff's amended complaint as concerning his October 2017 and April 2018 reassignments to DRC. (*Id*., PageID.114-115.) Also, having named Eagen, Shipman and Valade, and having attached Michigan Parole Board paperwork, the Court further interprets Plaintiff's amended complaint as taking issue with his apparent August 2018 parole revocation. (*Id*., PageID.114-115, 124-126.)

This interpretation of Plaintiff's amended complaint is buttressed by his instant motion response, which, on several occasions, refers to the October 2017 to June 2018 timeframe, mentions a December 5-9, 2017 hunger strike (4 days), and contends that, from April 16, 2018 until June 12, 2018 (57 days), he "was fed fruit & water . . . not even finger food . . . [,]" allegedly "to waive [his] religious right[.]" (ECF No. 61, PageID.388-391, 392-393, 398-399.) He also claims that he was under-fed for 210 days, seemingly a total of his pre-parole revocation days at DRC. (ECF No. 61, PageID.393 ¶¶ G & I, 394 ¶ K, 395 ¶ M.) Finally, the instant motion response attaches a portion of the August 2018 Michigan Parole Board material. (ECF No. 61, PageID.401.)[5]

[5] Perhaps for the issue of mootness, Plaintiff cites *Spencer v. Kemna*, 523 U.S. 1 (1998) (petition for a writ of habeas corpus, which sought to invalidate a parole revocation order, was moot where petitioner had "completed the entire term of imprisonment underlying the parole revocation[.]"), and *Carafas v. LaVallee*, 391 U.S. 234, 237 (1968) (Petitioner's cause was not moot where, even though he was unconditionally released, there were various collateral consequences of his conviction.). (ECF No. 15, PageID.114-115.) In fact, it does seem that Plaintiff

**2. Exhaustion of Available Administrative Remedies as to Plaintiff's Claims Regarding the Provision of Religious Meals at DRC during his October 2017 and April 2018 reassignments**

**a. 42 U.S.C. § 1997e(a) ("Applicability of administrative remedies")**

Defendants argue that Plaintiff did not exhaust his administrative remedies against them. (ECF No. 57, PageID.372.) This argument is based on the following portion of 42 U.S.C. § 1997e ("Suits by prisoners"): "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are *available* are exhausted." 42 U.S.C. § 1997e(a) (emphasis added).

"This requirement is mandatory but not jurisdictional, and applies to all federal claims seeking redress for prison circumstances or occurrences regardless of the type of relief being sought." *Lee v. Willey*, 789 F.3d 673, 677 (6th Cir.

---

returned to DRC after his April 25, 2019 parole, based on an August 4, 2019 misconduct report for threatening behavior at DRC and what appears to be a related August 8, 2019 Security Reclassification Notice that is signed by three members of the SCC Committee, including Assistant Deputy Warden Valade, and sanctioned Plaintiff to RSAT. (ECF No. 61, PageID.405-406). Still, it is worth noting the Court's November 25, 2019 report and recommendation, which observed that Plaintiff was not then at DRC "and may never be there again . . . [,]" (ECF No. 45, PageID.338), and which was adopted without objection (ECF No. 60).

2015). "[F]ailure to exhaust is an affirmative defense under the PLRA, and . . . inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Jones v. Bock*, 549 U.S. 199, 216 (2007). Stated otherwise, "the defendant has the burden to plead and prove by a preponderance of the evidence." *Lee*, 789 F.3d at 677 (citing *Jones*, 549 U.S. at 216).

**b. MDOC PD 03.02.130 ("Prisoner/Parolee Grievances")**

"[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones*, 549 U.S. at 218. The MDOC's grievance policy explains that "[p]risoners and parolees shall be provided with an effective method of seeking redress for alleged violations of policy and procedure or unsatisfactory conditions of confinement." MDOC PD 03.02.130, effective July 9, 2007. The policy provides that "[c]omplaints filed by prisoners regarding *grievable* issues as defined in this policy serve to exhaust a prisoner's administrative remedies only when filed as a grievance through all three steps of the grievance process in compliance with this policy." MDOC PD 03.02.130, effective July 9, 2007, ¶ B (emphasis added).[6]

[6] The MDOC Defendants correctly cite the July 9, 2007 version of MDOC 03.02.130, which has since been superseded by the current March 18, 2019 version. (ECF No. 57, PageID.375-378; ECF No. 25-3.) *See also* https://www.michigan.gov/documents/corrections/03_02_130_649677_7.pdf (last visited May 3, 2020).

**c. Plaintiff did not file a Step III grievance concerning the provision of religious meals at DRC during his October 2017 and April 2018 reassignments.**

Defendants Washington, Eagen, Shipman and Valade argue that Plaintiff did not exhaust his administrative remedies as to his claims against them. (ECF No. 57, PageID. 378.) With reference to the July 8, 2019 affidavit attached to *Defendant Romanowski*'s July 10, 2019 motion for summary judgment, the current Defendants contend that, "since January 2013, Coleman did not pursue any grievances at the Detroit Reentry Center in 2017 and 2018 – the time period relevant to Coleman's complaint allegations." (ECF No. 25-4, PageID.200-204; ECF No. 57, PageID.378.) More accurately stated, given Defendants' reliance upon a *Step III grievance report* attached to a prior dispositive motion, Plaintiff does not appear to have *exhausted* any grievances – i.e., "*pursued any grievances through Step III* . . ." – during this period. (ECF No. 57, PageID.379 (emphasis in original).) (*See also* ECF No. 62, PageID.410.)

Defendant Washington, Eagen, Shipman and Valade appear to be correct that Plaintiff "did not go through the grievance process on the issues in his complaint about the [DRC]." (ECF No. 57, PageID.378.) Preliminarily, Plaintiff filed this lawsuit in October 2018 and the operative pleading in April 2019. (ECF Nos. 1, 15.) Thus, even considering the 6-month time difference between the July

2019 affidavit upon which Defendants rely and the January 2020 filing of the instant motion, the affidavit still post-dates the operative pleading.

More to the point, Carolyn Nelson's Affidavit for Step III Grievances and accompanying "MDOC Prisoner Step III Grievance Report" dated July 8, 2019 support the conclusion that, at that point, the MDOC had most recently received Step III grievance appeals from Plaintiff on May 7, 2014. (ECF 25-4; PRF-14-04-0341-28i, PRF-14-04-0322-28i.)[7] Thus, Defendants have convincingly illustrated that – prior to initiating this lawsuit in October 2018 or even prior to amending his pleading in April 2019 – Plaintiff did not file a Step III grievance concerning the provision of religious meals at DRC during his October 2017 and April 2018 reassignments. *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999) ("we must dismiss plaintiff's complaint because he filed his federal complaint before allowing the administrative process to be completed.").

---

[7] Attached to Plaintiff's operative pleading is the October 2018 Step I grievance response in 2018-09-0780-14f, which appears to have concerned Ms. Hitchingham's denials of Plaintiff's requests for copies of legal documents. (ECF 15, PageID.118.) The response acknowledged that "the documents should have been copied[,]" and was signed by Librarian M. Sorensen and Assistant Deputy Warden G. Miniard. (*Id*.) Thus, while the Court is without Plaintiff's actual Step I grievance form, it does not appear that it related to the claims against Defendants Washington, Eagen, Shipman and Valade. Likewise, Plaintiff's citation to this grievance when stating that his attempt to seek judicial review was twice impeded (ECF No. 15, PageID.114) does not seem to concern the claims against the current Defendants.

**d. 42 U.S.C. § 1997e(a) and MDOC PD 03.02.130 apply to Plaintiff's claims regarding the provision of religious meals at DRC during his October 2017 and April 2018 reassignments.**

The Court has made reasonable efforts to extract the exhaustion arguments from Plaintiff's 15-page, handwritten response. Within what is labeled a "closing statement," Plaintiff contends that six categories of claims – RLUIPA violations, "prison for programming," cross-contamination, imminent danger, *ex post facto* violations, and failure to train – "are not grievable and do not need requirements for exhaustion, that all [run together] blurring the lines of institutional matters and custody matters." (ECF No. 61, PageID.396-397.)[8]

However, to the extent Plaintiff's claims are based on the provision of religious meals at DRC during his October 2017 and April 2018 reassignments (as opposed to the apparent August 2018 parole revocation), Plaintiff's lawsuit concerns "prison conditions," so 42 U.S.C. § 1997e(a) would apply. Plaintiff seems to distinguish "acts" from "prison conditions." (ECF No. 61, PageID.396.)

---

[8] Here, Plaintiff relies upon various cases, including *Dilaura v. Ann Arbor Charter Twp.*, 30 F. App'x 501, 507 (6th Cir. 2002) ("exhaustion of administrative remedies is not required for RLUIPA claims when brought as part of a § 1983 action."). Yet, elsewhere, Plaintiff cites a Supreme Court decision, which instructs: "a prisoner may not sue under RLUIPA without first exhausting all available administrative remedies." *Cutter v. Wilkinson*, 544 U.S. 709, 723 n.12 (2005) (referencing 42 U.S.C. § 2000cc-2(e) and § 1997e(a)). (*See* ECF No. 61, PageID.395 ¶ F.)

But one would be hard-pressed to conclude that Plaintiff's religious meals claims do not concern conditions at DRC.

Perhaps Plaintiff intended to argue that his claims against Defendants were "non-grievable" under MDOC 03.02.130 ¶ F. To be sure, the grievance policy does except "[d]ecisions made by the Parole Board to grant, deny, rescind, amend or revoke parole, or not to proceed with a lifer interview or a public hearing." MDOC PD 03.02.130 ¶ F(3). Thus, to the extent Plaintiff's claims against Defendants Shipman, Eagen and/or Valade are based on the apparent August 2018 parole revocation, the MDOC PD 03.02.130 would not apply. However, Defendants argue that "there is nothing in MDOC Policy Directive 03.02.130 – or anywhere else for that matter – exempting [Plaintiff's religious diet] claims from the exhaustion process." (ECF No. 62, PageID.411.) Such claims are not, at least expressly, among the "non-grievable" paragraphs. *See* MDOC PD 03.02.130 ¶¶ F(1)-(5).

Also, Plaintiff argues that DRC "is not a prison[,]" therefore, the PLRA's exhaustion requirement does not apply. (ECF 15, PageID.114, 116, 117 ¶ 2.) However, as the Undersigned noted in a prior report and recommendation (ECF No. 41, PageID.306-307), it seems that Plaintiff knows better, as he previously filed grievances while at the DRC in 2014, when it bore the designation PRF. (ECF 25-4; PRF-14-04-0341-28i, PRF-14-04-0322-28i.) *See*

https://www.michigan.gov/documents/corrections/01-15-15_-_Section_8041_479882_7.pdf (last visited May 3, 2020) & https://www.michigan.gov/corrections/0,4551,7-119-1435_1498-289645--,00.html (last visited May 3, 2020).) More to the point, the relevant MDOC policy directive is titled, "Prisoner/Parolee Grievances," and it contains the following policy statement: "*[p]risoners and parolees* shall be provided with an effective method of seeking redress for alleged violations of policy and procedure or unsatisfactory conditions of confinement." MDOC PD 03.02.130 (emphasis added). It also provides that "*[p]risoners and parolees* are required to file grievances in a responsible manner." (*Id.* ¶ G (emphasis added).) As the MDOC's website explains, the DRC "falls under the Office of Parole and Probation Services within the Field Operations Administration. The goal of DRC is to enhance public safety and parolee success. The DRC houses parolees and prisoners." *See* https://www.michigan.gov/corrections/0,4551,7-119-1435_1498---,00.html (last visited May 3, 2020). Thus, the Court has little reason to believe that Plaintiff would be excused from the exhaustion requirement with respect to conditions at DRC – whether Plaintiff was there as a prisoner or a parolee.

**e. Plaintiff seems to conflate 28 U.S.C. § 1915(g)'s "imminent danger" exception with 42 U.S.C. § 1997e(a)'s exhaustion requirement.**

Plaintiff contends that, "[w]hen a person is in imminent danger[,] exhaustion is not required[.]" (ECF 15, PageID.115.) Here, Plaintiff appears to be referring to the "imminent danger" exception to 28 U.S.C. § 1915(g). *Rittner v. Kinder*, 290 F. App'x 796, 798 (6th Cir. 2008) (dismissing Plaintiff's complaint pursuant to Section 1915(g) where he was subject to the three strikes rule and "his complaint failed to suggest that he was 'under imminent danger of serious physical injury.'"). However, the Supreme Court has explained that "[c]ourts may not engraft an unwritten 'special circumstances' exception onto the PLRA's exhaustion requirement. The only limit to § 1997e(a)'s mandate is the one baked into its text: An inmate need exhaust only such administrative remedies as are 'available.'" *Ross v. Blake*, 136 S. Ct. 1850, 1862 (2016). *See also Williams v. White*, 724 F. App'x 380, 383 (6th Cir. 2018) ("there is no mental-capacity exception to the PLRA."). Plaintiff's multiple citations to a non-binding case, *Ashley v. Dilworth*, 147 F.3d 715 (8th Cir. 1998) (*see* ECF No. 15, PageID.113-117), which in any event involves distinguishable facts, does not bolster his position.

To be sure, a reliance on 28 U.S.C. § 1915 ("Proceedings in forma pauperis") is somewhat understandable where, as here, the Court entered an order waiving prepayment of the filing fee and directing periodic subsequent payments of the filing fee. (ECF No. 4.) Nonetheless, unlike Section 1915(g), Section

1997e(a) does not contain an "imminent danger" exception, and Section 1915(g)'s "three strikes rule" is not at issue here.[9]

**f. As to grievable issues, Plaintiff has not shown that the grievance procedure was unavailable to him at DRC during his October 2017 and April 2018 reassignments.**

Thus, as to grievable issues, the question becomes whether the grievance procedure was *available* to Plaintiff at DRC during his October 2017 and April 2018 reassignments. As Plaintiff points out, an administrative procedure may be *unavailable* when it operates as a "simple dead end," is "so opaque that it becomes, practically speaking, incapable of use[,]" or where "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross*, 136 S. Ct. at 1859-1860. (ECF No. 61, PageID.407; *see also id.*, PageID.398.) "A prisoner's lack of compliance may be excused if the administrative remedies are not available, but this court has required

[9] Relatedly, Plaintiff seems to assert that, as a parolee, he "is not a 'prisoner' as defined by 28 U.S.C. § 1915(h)." *Marr v. Booker*, No. 2:13-CV-13668, 2014 WL 2883458, at *6 (E.D. Mich. Apr. 30, 2014) (emphasis omitted) (Komives, M.J.), *report and recommendation adopted in part*, No. 13-13668, 2014 WL 2883466 (E.D. Mich. June 25, 2014) (Battani, J.). (ECF No. 15, PageID.114; ECF No. 61, PageID.396-397.) However, Section 1915, which concerns the determination of *in forma pauperis* status, is not germane to the exhaustion issue currently before the Court. Moreover, within this very Court in a case concerning Sections 1915(g) and (h), *Marr*'s finding that Marr was not a "prisoner" was rejected as non-binding. *C.f. LaPine v. Romanowski,* No. 2:15-cv-11362, 2015 U.S. Dist. LEXIS 76056, at *1 (E.D. Mich. June 12, 2015) (Drain, J.).

a prisoner to make affirmative efforts to comply with the administrative procedures before analyzing whether the facility rendered these remedies unavailable." *Lee*, 789 F.3d at 677 (internal quotations and citation omitted).

Plaintiff's claims that there is "nothing a grievance can accomplish when" he is given the ultimatum to "eat the contaminated food, don't eat . . . or sign off [on his] religious detail[.]" (ECF No. 61, PageID.396.) He also claims that there is "nothing a grievance can fix when officials are not following policy . . . [,]" and that "there is no way a grievance can remedy relief for authorities['] lack of training . . . ." (*Id.*, PageID.396-397.) However, these mere arguments, alone, do not illustrate that the grievance process was *unavailable* as to his grievable claims.

Plaintiff also suggests that his efforts to get help have been frustrated. (ECF No. 61, PageID.387-389, 393, 395, 397, 400.) For example, he claims that, under Defendant Valade's watch, he "complained of frozen contaminated food[,]" "los[t] 25 pounds," "went to seg[regation] twice [from] Oct. 2017 – Aug. 2019 . . . [,]" and underwent a 5-day hunger strike from December 5 – December 9, 2017. Still, he claims, Defendant Valade "refuses to respond . . . [,]" other than to say, "the meals met religious requirements[.]" (ECF No. 61, PageID.394 ¶ K.) According to Plaintiff, Defendant Valade did not respond for 57 days (presumably April 16, 2018 to June 12, 2018), during which time he "went with only fruit and water." (*Id.*, PageID.393 ¶¶ F, G, H; *see also* ECF No. 15, PageID.127.) Yet, the

statements within Plaintiff's response do not appear to be sworn to or made under penalty of perjury. *See*, *e.g.*, 28 U.S.C. § 1746 ("Unsworn declarations under penalty of perjury"). Moreover, if the "complaint" about frozen contaminated food to which Plaintiff refers (ECF No. 61, PageID.394 ¶ K) was not made within a Prisoner/Parolee Grievance (CSJ-247A) form (but just during conversation with Rogers or Valade (*see* ECF No. 61, PageID.401) or in a kite (ECF No. 61, PageID.402) or by some other means), it would not constitute a Step I grievance under MDOC PD 03.02.130 and, by extension, would not satisfy 42 U.S.C. 1997e(a).

True, as Plaintiff points out, "the exhaustion requirement should not operate as an absolute bar to an inmate's claim where prison administrators prevent or altogether refuse to review the allegations on which the claim is based." *Alexander*, 31 F. App'x at 178. Yet, it seems unlikely that Plaintiff sought such help via an MDOC PD 03.02.130 Step I grievance, because he contends that the later-enacted "religious diet policy" does not specify an appeal process or indicate that it has a grievance procedure, "rather than (or in addition to) a vehicle for requesting a health FDA approved religious diet . . . ." (*Id.*, PageID.388, 393, 400, 407.)[10] Plaintiff's suggestions that officials' failure to respond to a *request* for "a

[10] The Court suspects that Plaintiff is referring to: (a) MDOC PD 04.07.100 ("Offender Meals") (ECF No. 15, PageID.119-122); (b) MDOC PD 04.07.103 ("Food Service Sanitation and Safety Standards") (ECF No. 15, PageID.129-132;

healthy FDA approved religious diet" could be "viewed as exhausted[,]" (*id.*, PageID.400 ¶ C, 407) or "highlights a[n] exceptional circumstance[,]" (*id.*, PageID.393 ¶ F) are unavailing. Whenever the "religious diet" MDOC policy directive to which Plaintiff refers became effective, it would not "override" Plaintiff's obligations to comply with MDOC PD 03.02.130's grievance process as to grievable issues, which is required by 42 U.S.C. § 1997e(a). (*Id.*, PageID.400 ¶ C, 393 ¶ F.) *Jones*, 549 U.S. at 218 ("[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion."). *See*, *e.g.*, *Davis v. Heyns*, No. 17-1268, 2017 WL 8231366, at *1 (6th Cir. Oct. 16, 2017) ("Davis filed grievance LCF–2014–06–0717–20e, asserting that the denial of his religious diet accommodation request violated his First Amendment right to freedom of religion."); *Eagle v. Michigan Dep't of Corr.*, No. CIV.A. 08-13387, 2011 WL 2471025, at *1 (E.D. Mich. Apr. 22, 2011) (Randon, M.J.) ("Both grievances dealt with Petitioner's general complaint that he was forced to choose between receiving meals and attending religious events or services."), *report and recommendation adopted sub nom. Eagle v. Michigan Dep't of Correction*, No. 08-13387, 2011 WL 2471035 (E.D. Mich. June 22, 2011) (Roberts, J.).

---

ECF No. 65, PageID.423-424); or, (c) MDOC PD 05.03.150 ("Religious Beliefs and Practices of Prisoners"), Paragraph QQ of which states that "[t]he prisoner shall be transferred to an institution offering the meals, if necessary." (ECF No. 15, PageID.123; ECF No. 61, PageID.393 ¶ G).

Additionally, "[t]he plain language of the statute makes exhaustion a precondition to filing an action in federal court . . . . The prisoner, therefore, may not exhaust administrative remedies during the pendency of the federal suit." *Freeman*, 196 F.3d at 645 (internal and external citations omitted). If Plaintiff is arguing that "prison administrators prevent[ed] or altogether refuse[d] to review" his *pre-suit attempts to grieve* the provision of religious meals at DRC during his October 2017 and April 2018 reassignments, *Alexander*, 31 F. App'x at 178, it is not clear, and this is not cured by the suggestion that officials refused to respond to or ignored claims raised outside of the grievance process. (*See*, *e.g.*, ECF No. 61, PageID.387 ¶ 9, 389 ¶ 5, 390 ¶ G, 391, 393 ¶¶ F & G, 395 ¶ P, 400 ¶¶ B & C.)

Finally, Plaintiff's apparent failure to address his concerns about religious meals through the established grievance process deprived DRC officials of the opportunity to address and possibly correct the situation − if correction was in fact required − short of full-blown federal litigation. Under the PLRA, a prisoner may not bring an action "with respect to prison conditions under section 1983 of this title, or any other Federal law . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Congress enacted this provision to address the "outsized share" of prisoner litigation filings and to ensure that "the flood of nonmeritorious claims does not submerge and effectively preclude consideration of the allegations with merit." *Jones*, 549 U.S. at 203-04. Put

another way, one purpose of § 1997e(a) is to "reduce the quantity and improve the quality of prisoner suits[.]" *Porter v. Nussle*, 534 U.S. 516, 524 (2002). In addition, exhaustion "gives an agency an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court, and it discourages disregard of [the agency's] procedures." *Woodford v. Ngo*, 548 U.S. 81, 89 (2006) (internal quotations and citation omitted). Judicial economy warranted some real attempt at available administrative exhaustion before calling upon the Court to roll up its proverbial sleeves and unravel the merits of this dispute.

**3. Plaintiff's claims regarding his apparent August 2018 parole revocation**

Plaintiff's claims against Parole Board Chairperson Eagen, Parole Board Member Shipman, and DRC's on-site Parole Supervisor Valade are somewhat of a mystery to the Court. Indeed, the Court suspects that these roles have little, if anything, to do with control over or the provision of religious meals at DRC during his October 2017 and April 2018 reassignments. Even if Valade had become an Assistant Deputy Warden by the time of Plaintiff's August 2019 security reclassification notice, she described herself as "a Parole Supervisor at DRC" during the August 2018 parole violation arraignment (ECF No. 61, PageID.401, 405.)

As for Plaintiff's various assignments to DRC, it is not clear that Eagen, Shipman and/or Valade played a part in Plaintiff's October 2017 assignment to DRC for ASAT, Plaintiff's April 2018 parole violation charges, or the allegedly resulting assignment to DRC for RSAT (ECF No. 1, PageID.13), which seems to have lasted into June 2018.

On the other hand, Plaintiff's June 2018 alleged refusal to participate in and/or complete RSAT provided support for the apparent August 2018 parole revocation – a decision which was based in part on Defendant Valade's parole violation arraignment testimony and signed by Eagen and Shipman. (ECF No. 15, PageID.124-126.) According to Plaintiff, he was sent "back to prison" on June 28, 2018 (ECF No. 61, PageID.391), perhaps as the result of his June 2018 alleged refusal. Forty (40) days later, on August 7, 2018, the Michigan Parole Board appears to have revoked Plaintiff's parole. (ECF No. 15, PageID.124-126.) In other words, it is clear that Defendants Eagen, Shipman and Valade were involved in Plaintiff's apparent August 2018 parole revocation.

Within Plaintiff's amended complaint, Plaintiff seems to contest his parole revocation, as he claims that a grievance cannot reinstate a parole. (ECF No. 15, PageID.114.) This interpretation is buttressed by Plaintiff's statement in his motion response that the line between institutional and custody matters has been blurred. (ECF No. 61, PageID.396.) So it seems likely that Plaintiff's claims

against Parole Board Chairperson Eagen, Parole Board Member Shipman, and DRC's on-site Parole Supervisor Valade are based, at least in part, on their involvement in the August 2018 Parole Violation Arraignment and Parole Board Action.

Given the prior discussion on exhaustion, it is worth noting here that "[d]ecisions made by the Parole Board to grant, deny, rescind, amend or revoke parole, or not to proceed with a lifer interview or a public hearing . . ." are not grievable. MDOC PD 03.02.130 ¶ F(3), effective July 9, 2007. Thus, Plaintiff could not have grieved Shipman and Eagen's decisions in their capacity as Parole Board Chairman and Parole Board Member.

Nonetheless, Shipman and Eagen are immune from claims for damages when acting in their adjudicatory role. *Canales v. Gabry*, 844 F. Supp. 1167, 1170 (E.D. Mich. 1994) (Gilmore, J., *adopting report and recommendation of* Morgan, M.J.) ("Parole board members acting in their adjudicatory role have routinely been held entitled to absolute immunity from damages."); *see also Coleman v. Martin*, 363 F. Supp. 2d 894, 903 (E.D. Mich. 2005) (Tarnow, J., *adopting report and recommendation of* Majzoub, M.J.) ("Parole board members . . . enjoy absolute immunity when performing adjudicatory functions."). Likewise, Defendant Valade would be immune from a suit for damages based on her testimony at the parole revocation arraignment. *Smith v. Sampson*, No. 2:10-CV-10363, 2010 WL

750195, at *4 (E.D. Mich. Mar. 3, 2010) ("The parole agent also is entitled to absolute immunity on Plaintiff's claim for damages for her conduct in preparing a report, testifying, and/or making a parole recommendation.") (Duggan, J.).

To the extent Plaintiff challenges a placement decision resulting from the apparent August 2018 parole revocation in which Eagen, Shipman and/or Valade were involved, it is not clear that he was sent to DRC. Instead, it seems that the Parole Violation Arraignment took place at the Charles Egeler Reception & Guidance Center (RGC) in Jackson, Michigan (ECF No. 15, PageID.124-126), Plaintiff initiated this lawsuit in October 2018 while incarcerated at STF in St. Louis, Michigan (ECF No. 1, PageID.16-17), and Plaintiff's December 2018 ASAT Discharge Summary Report suggests that Plaintiff was then located at STF (ECF No. 15, PageID.128).

Finally, to the extent Plaintiff is challenging the August 2018 revocation itself, a related request for declaratory and/or injunctive relief is either moot (based on his subsequent April 25, 2019 parole) or barred by *Heck v. Humphrey,* 512 U.S. 477, 487 (1994) ("when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated."). *See also Smith v. Stephens*, No. 2:10-CV-13763,

2012 WL 831483, at *11 (E.D. Mich. Mar. 8, 2012) ("any request by plaintiff for declaratory and/or injunctive relief with respect to the October 11, 2007 parole revocation hearing is an attempt to demonstrate the invalidity of the revocation of plaintiff's parole.") (Komives, M.J.), *report and recommendation adopted*, No. 10-13763, 2012 WL 3930326 (E.D. Mich. Sept. 10, 2012) (Borman, J.).

In sum, Plaintiff's claims regarding his apparent August 2018 parole revocation should be dismissed, either because such claims fail "to state a claim on which relief may be granted[,]" or seek "monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B)(ii),(iii).

**4. To the extent Plaintiff seeks *monetary damages*, his official capacity claims against Defendant are barred by the Eleventh Amendment.**

Plaintiff sues Defendants in their personal and official capacities and seeks monetary damages, as well as other forms of relief. (ECF No. 15, PageID.113, 116.) *See Kentucky v. Graham*, 473 U.S. 159, 167 (1985) (discussing "the basic distinction between personal-and official-capacity actions.").

**a. Official capacity claims**

Defendants Washington, Eagen, Shipman and Valade argue that, as state officials, they "are immune from suit under the Eleventh Amendment." (ECF No. 57, PageID.379.) More specifically, they contend that: (a) they "are State of Michigan employees who at all times acted in their official capacities[;]" (b) "[t]he

State of Michigan has not consented to suit[;]" and, (c) they "enjoy Eleventh Amendment immunity in their official capacities." (ECF No. 57, PageID.380; *see also* ECF No. 62, PageID.411.)

"Relief that in essence serves to compensate a party injured in the past by an action of a state official in his official capacity that was illegal under federal law is barred even when the state official is the named defendant." *Papasan v. Allain*, 478 U.S. 265, 278 (1986). Accordingly, Plaintiff's claims for *monetary damages* against Defendants in their *official capacities* are barred by the Eleventh Amendment.

While Plaintiff's response is difficult to discern, he does attempt to address "immunity arguments." (ECF No. 61, PageID.407.) His reliance upon *City of Canton, Ohio v. Harris*, 489 U.S. 378 (1989) is somewhat misplaced, because this lawsuit does not involve a municipality. (*See*, *i.e.*, ECF No. 61, PageID.397.) Moreover, "[t]here is no longer a need to bring official-capacity actions against local government officials, for under *Monell, supra,* local government units can be sued directly for damages and injunctive or declaratory relief." *Kentucky*, 473 U.S. at 167.

**b. Personal capacity claims**

Plaintiff correctly notes that Defendants can be liable under 42 U.S.C. § 1983 for their personal acts. (ECF No. 61, PageID.407.) As the Supreme Court

has succinctly explained, "state officials, sued in their individual capacities, are 'persons' within the meaning of § 1983. The Eleventh Amendment does not bar such suits, nor are state officers absolutely immune from personal liability under § 1983 solely by virtue of the 'official' nature of their acts." *Hafer v. Melo*, 502 U.S. 21, 31 (1991). Nonetheless, for the reasons set forth in prior sections, Plaintiff's personal capacity claims – whether related to the provision of religious meals at DRC during his October 2017 and April 2018 reassignments or his apparent August 2018 parole revocation – should not proceed.

**E. Conclusion**

Accordingly, for the reasons discussed in Section C, the Court should **DENY** Plaintiff's December 2019 requests for class certification and preliminary injunction (ECF Nos. 51, 52) and March 2020 motion independent of final judgment (ECF No. 65). Moreover, the Court should **GRANT** Defendants' January 14, 2020 motion for summary judgment and to dismiss (ECF No. 57), both to the extent it seeks exhaustion-based dismissal of Plaintiff's claims regarding the provision of religious meals at DRC during his October 2017 and April 2018 reassignments (Section D.2) and to the extent it seeks dismissal of Plaintiff's official capacity damages claims as barred by the Eleventh Amendment (Section D.4). Finally, pursuant to 28 U.S.C. § 1915(e)(2)(B), the Court should dismiss Plaintiff's claims concerning his apparent August 2018 parole revocation. (Section

D.3) If the Court accepts these recommendations, as well as the above-described scope of Plaintiff's operative pleading (Section D.1.e), then the case concludes as to the four remaining Defendants – Washington, Eagen, Shipman and Valade.

## III. PROCEDURE ON OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.* Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR

72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.* If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated: June 11, 2020

Anthony P. Patti
UNITED STATES MAGISTRATE JUDGE