UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

D<small>EON</small> C<small>OLEMAN</small>,

  Plaintiff,

v.

H<small>EIDI</small> W<small>ASHINGTON</small>, <small>ET AL.</small>,

  Defendants.

         /

Case No. 18-13171

S<small>ENIOR</small> U.S. D<small>ISTRICT</small> J<small>UDGE</small>
A<small>RTHUR</small> J. T<small>ARNOW</small>

U.S. M<small>AGISTRATE</small> J<small>UDGE</small>
A<small>NTHONY</small> P<small>ATTI</small>

**O<small>RDER</small> A<small>DOPTING THE</small> R<small>EPORT AND</small> R<small>ECOMMENDATION</small> [67]; O<small>VERRULING</small> P<small>LAINTIFF'S</small> O<small>BJECTIONS</small> [77]; A<small>ND</small> G<small>RANTING</small> D<small>EFENDANTS'</small> M<small>OTION FOR</small> S<small>UMMARY</small> J<small>UDGMENT</small> [57]**

*Pro se* Plaintiff Deon Coleman, a former inmate in the custody of the Michigan Department of Corrections ("MDOC") at the Central Michigan Correctional Facility, has brought claims pursuant to the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc-1(a). (ECF No. 1). Coleman is a practicing Muslim and requested the Detroit Reentry Center ("DRC") provide him with a halal diet. This action arises from MDOC's alleged failure to provide Mr. Coleman with his required diet.

On February 20, 2019, the Court referred pretrial matters in this case to Magistrate Judge Anthony P. Patti. (ECF No. 9). On January 14, 2020, Defendants brought a Motion for Summary Judgment (ECF No. 57). Pursuant to 28 U.S.C. §

636(b)(1)(B), the Magistrate Judge issued a Report and Recommendation on June 11, 2020. For the reasons discussed below, the Court will overrule Plaintiff's objections [77], adopt the R&R [67], and grant Defendants' Motion for Summary Judgment [57].

## FACTUAL BACKGROUND

The R&R sets forth the factual background as follows:

> Coleman claims that, on or about October 4, 2017, he was ordered to complete ASAT (Advanced Substance Abuse Treatment), a 90-day in-custody treatment program at the Michigan Department of Corrections (MDOC) Detroit Reentry Center (DRC). (ECF No. 1, PageID.1.). According to Coleman, DRC 'does not have a religious kitchen…[,]' and 'the transported foods [were] not edible or safe.' (Id.)  Plaintiff allegedly completed ASAT in February 2018. (Id.; see also ECF No. 61, PageID.388.)
>
> Coleman was charged with April 2018 violations of certain parole conditions. (ECF No. 1, PageID.13.)  He claims he was again sanctioned to the DRC on April 16, 2018, this time for Residential Substance Abuse Program (RSAT), purportedly an 8-month in-custody treatment program (ECF No. 1, PageID.1.)  He inquired about his religious diet, and, on June 5, 2018, registered dietician A. Fortescue responded, *inter alia*, that Plaintiff would have to contact administration. (ECF No. 1, PageID.14; DE 7, PageID.75, ECF No. 15, PageID.127; ECF No. 65, PageID.425.)
>
> On or about June 8, 2018, Coleman 'failed to participate and/or complete the Residential Substance Abuse Treatment (RSAT) program, causing him to be discharged.' (ECF No. 1, PageID.12) According to Plaintiff, he was sent 'back to prison' on June 28, 2018. (ECF No. 61, PageID.391.) Accordingly, Plaintiff's parole was subsequently revoked in August 2018. (ECF No. 1, PageID.10-12; DE 7, PageID.72-74, ECF No. 15, PageID.124-126; ECF No. 65, PageID.420.) Nonetheless, on December 14, 2018, Plaintiff successfully completed substance abuse treatment at the Central Michigan Correctional Facility (STF). (ECF No. 7, PageID.76; ECF No. 15, PageID.128.)

(ECF No. 67, PageId.431-433 R&R 2-4) (footnote omitted).

## PROCEDURAL HISTORY

Coleman filed this suit on October 11, 2018, while he was incarcerated at MDOC's Macomb Correctional Facility. (ECF No 67, PageId.434, R&R at 5). On April 4, 2019, Coleman filed an amended complaint, which remains active as to Defendants Washington, Eagan, Shipman, and Valade. (*Id*.). Discovery was conducted, and, on January 14, 2020, Defendant filed a motion for Summary Judgment. (ECF No. 57). Plaintiff has, for his part, filed four one-page motions. The first two, on December 26, 2019, are labelled as a request for class action certification and a request for a preliminary injunction. (ECF Nos. 51, 52). The third and fourth, on March 27, 2020 and June 10, 2020, are labeled as a motion independent of a final judgment and a motion for compensatory relief. (ECF Nos. 65 & 70).

Considering these five motions, the Magistrate Judge on June 11, 2020 issued his Report and Recommendation [67]. Plaintiff objected in a brief dated June 22, 2020, but filed on July 23, 2020. (ECF No. 76). The Court will consider this brief to be timely.

## ANALYSIS

The Magistrate Judge in his R&R had advised the Court to grant Defendants' Motion for Summary Judgment and to deny all of Plaintiff's pending motions. Plaintiff has filed four objections to the R&R.

The first objection argues that Defendant Washington allowed the DRC to provide inadequate food to Coleman. The second objection states that Defendants Eagan and Shipman were aware that Coleman was being provided inadequate food at DRC. The third objection argues that Defendant Valade operates a kitchen that does not meet the minimal requirements for religious food. Coleman argues that he lost his parole, because he could not abide by the food he received at DRC. The fourth objection argues that the fact that Coleman is released does not moot his claims, because he still suffers collateral consequences of his parole revocation. He further argues that PLRA exhaustion is not required of him, because no administrative remedies were available, and that official indifference had rendered any grievance process a dead end.

These objections do not challenge the Magistrate Judge's finding that Coleman has not properly exhausted his administrative remedies pursuant to the Prison Litigation Reform Act. ("PLRA"). 42 U.S.C. § 1997(e). Coleman's objections merely restate arguments he raised in opposition to Defendants' motion to summary judgment, which have already been considered by the Magistrate Judge. Such duplicative objections "undermine the purpose of the Federal Magistrate's Act, 28 U.S.C. § 636, which serves to reduce duplicative work and conserve judicial resources." *Owens v. Comm'r of Soc. Sec.,* No. 1:12-CV-47, 2013 WL 1304470, at

*3 (W.D. Mich. Mar. 28, 2013).The Court will nevertheless conduct a de novo review of Defendants' PLRA exhaustion affirmative defense.

Though failure to exhaust such remedies is not a jurisdictional bar to filing suit, when raised as an affirmative defense it is grounds for dismissal. *Jones v. Bock*, 549 U.S. 199, 212 (2007); *Lee v. Willey*, 789 F.3d 673, 677 (6th Cir. 2015). There are no federal requirements for exhaustion; for a prisoner to exhaust his remedies, he must follow the grievance procedures put forward by the correctional institution. *Mattox v. Edelman*, 851 F.3d 583, 590 (6th Cir. 2017). MDOC uses a three-step grievance procedure that calls for prisoners to "briefly but concisely" provide the "who, what, when, where, how" details of the issue they are grieving. *Id.* (citing Michigan Department of Corrections Policy Directive 03.02.130 (effective July 9, 2007)).

Reviewing Defendants' motion for summary judgment, the Magistrate Judge found that Mr. Coleman did not exhaust his administrative remedies against the MDOC Defendants. The MDOC utilizes a three-step grievance procedure. There is no record that Coleman ever filed any grievance at the DRC between 2017 and 2018. Coleman does not dispute that he never grieved his case. Rather, he argues that the exhaustion requirements should not apply to him.

Coleman's objections argue that exhaustion of administrative remedies is not required for RLUIPA claims when brought as a civil rights action.(ECF Nos. 1, 77).

Plaintiff references *Dilaura v. Ann Arbor Charter Tp.*, 30 Fed.Appx.501 (6th Cir. 2002), to support his claim that exhaustion does not apply to his case. That case, however, was not brought by a prisoner and so does not implicate the PLRA. The PLRA does not have an exception for RLUIPA claims, and its exhaustion requirement "is mandatory and applies to all suits regarding prison conditions, regardless of the nature of the wrong or the type of relief sought." *Murphy v. Lockhart*, 826 F. Supp. 2d 1016, 1027 (E.D. Mich. 2011), amended in part (Oct. 14, 2011); *see also DeHart v. Horn*, 390 F.3d 262, 273 (3d Cir. 2004) (analyzing the exhaustion requirement for RLUIPA and Religious Freedom and Restoration Act claims brought by a prisoner); *Smith v. Thompson*, 638 F. Supp. 2d 754, 757 (E.D. Ky. 2009) (dismissing a RLUIPA and first amendment case for failure to exhaust).

Coleman also argues that exhaustion was not required of him because administrative remedies were not available to him within the meaning of the PLRA. The R&R found that however much Plaintiff alleges to have informally complained to Valade about the state of his meals, he never filed a Step I Grievance under MDOC PD 03.02.130. The R&R emphasizes precedent that exhaustion is mandatory for religious diet claims, *See*, *e.g.*, *Davis v. Heyns*, No. 17 1268, 2017 WL 8231366, at *1 (6th Cir. Oct. 16, 2017) ("Davis filed grievance LCF–2014–06–0717–20e, asserting that the denial of his religious diet accommodation request violated his First Amendment right to freedom of religion."); *Eagle v. Michigan Dep't of Corr.*,

No. CIV.A. 08-13387, 2011 WL 2471025, at *1 (E.D. Mich. Apr. 22, 2011) ("Both grievances dealt with Petitioner's general complaint that he was forced to choose between receiving meals and attending religious events or services."), *report and recommendation adopted sub nom. Eagle v. Michigan Dep't of Correction*, No. 08-13387, 2011 WL 2471035 (E.D. Mich. June 22, 2011).

Coleman argues in his objections that exhausting his remedies would have been a dead end that required wasting valuable time while he was deprived of adequate sustenance. The Magistrate Judge recognized that Plaintiff was correct that "an administrative procedure may be *unavailable* when it operates as a "simple dead end," is "so opaque that it becomes, practically speaking, incapable of use[,]" or where "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." (ECF No. 67, PageId.450, R&R at 21, citing *Ross*, 136 S. Ct. at 1859-1860. Plaintiff provided no evidence in his objections, however, as he provided no evidence in his response to Defendants' motion for summary judgment, that MDOC was willfully blind or otherwise unreceptive to his complaints the quality of DRC's religious food. Indeed, if he believed that Valade's indifference was the source of his problems, Coleman could have appealed any denial up the MDOC chain-of-command. Coleman has filed grievances before at DRC, and it is inexplicable that he would opt for a hunger

strike and a federal lawsuit over the simple expedient of filing a grievance and appealing any subsequent denials.

As the Magistrate Judge emphasized, the PLRA's exhaustion requirement expresses Congress's desire that prisons and jails have the opportunity to resolve disputes before those disputes reach federal courts. Coleman's argument that he couldn't wait "4 months for the grievance process to come to a conclusion" presupposes that his grievance would have been denied, which was far from inevitable given that the MDOC does have a religious diet program. It is also worth noting that more than four months elapsed between Coleman's original complaint and his amended complaint, which creates an inference that Coleman's failure to exhaust wasn't entirely a product of his haste to move the Court for an injunction.

To the extent that his case implicates the conditions of his confinement—specifically his diet at the DRC—Coleman's case will be dismissed without prejudice for failing to satisfy the exhaustion requirements of the PLRA. To the extent, however, that his case implicates the revocation of his parole, his claims will be dismissed with prejudice, as frivolous, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii),(iii) (requiring that district courts dismiss any suit filed under the statute that fails "to state a claim on which relief may be granted[,]" or seek "monetary relief against a defendant who is immune from such relief.").

The R&R advised the Court that Eagan and Shipman, to the extent that they were involved in Plaintiff's parole revocation, were immune from suits for damages arising from actions taken in their adjudicatory role. (ECF No. 67, PageId.457, R&R at 28, citing *Canales v. Gabry*, 844 F. Supp. 1167, 1170 (E.D. Mich. 1994) and *Coleman v. Martin*, 363 F. Supp. 2d 894, 903 (E.D. Mich. 2005). Valade would also be entitled to absolute immunity for her testimony to the parole board. (*Id.*, citing *Smith v. Sampson*, No. 2:10-CV-10363, 2010 WL 750195, at *4 (E.D. Mich. Mar. 3, 2010)). The R&R further noted that any claims for injunctive relief related to his parole revocation are either moot, as a result of his April 25, 2019 parole, or barred by *Heck v. Humphrey,* 512 U.S. 477 (1994). Plaintiff never objected to the R&R's reasoning on this portion of his case, and so his suit will be dismissed as frivolous to the extent that it challenges his August 2018 parole revocation.

## CONCLUSION

Plaintiff brought this suit to challenge what he alleges was the failure of the Detroit Reentry Center to provide for his religious dietary needs. The Court never reached the merits of this argument, however, because Plaintiff did not exhaust his administrative remedies as provided for under the Prison Litigation Reform Act.

Plaintiff also appears to seek injunctive and monetary relief from the denial of his parole that he alleges was caused by the non-halal food served at the Detroit Reentry Center. This claim is barred as well, because Defendants are immune from

suit for damages arising from decisions made in their adjudicatory capacities. Further, the claim is now moot because Coleman was paroled subsequent to the filing of this suit.

Accordingly,

IT IS **ORDERED** that the Report and Recommendation [67] is hereby **ADOPTED** and entered as the findings and conclusions of the Court.

**IT IS FURTHER ORDERED** that Plaintiff's Objections [77] are **OVERRULED**.

**IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment [57] is **GRANTED**.

**SO ORDERED**.

Dated: August 24, 2020

s/Arthur J. Tarnow
Arthur J. Tarnow
Senior United States District Judge